D. The sentencing goals of protection of society, deterrence, rehabilitation, and retribution should have been modified to include consideration of the best interests of the Appellant (who was 15 years of age at the time of the charged offenses).
In addressing his arguments, the Court of Appeals concluded:
Shanahan argues that the district court should have given greater consideration to his age, his immaturity, and his mental condition. When it imposed the sentences in this case, the district court specifically considered the testimony of Dr. Heinbecker, a psychiatrist, who testified during the sentencing hearing. As the district court set forth in its sentencing memorandum, Dr. Heinbecker stated that Shanahan's thinking was "immature and uninformed" and that Shanahan had "no comprehension of the gravity of killing someone." According to Dr. Heinbecker, Shanahan, at the time of sentencing, still did not fully appreciate the seriousness of the crime. The district court also specifically noted Shanahan's life history-his parents' divorce, his lack of a role model and his low self-esteem. Finally, the district court noted *163 that, although Shanahan was suffering from depression at the time of the crime, he was capable of distinguishing between right and wrong and had the ability to conform his behavior to societal standards.
....
Although the sentences in the instant case are severe, the Court cannot hold that they are excessive under any reasonable view of the facts.
Shanahan, 133 Idaho at 901-02, 994 P.2d at 1064-65. Because his argument before this Court is in substance a reiteration of his earlier argument before the sentencing court and the Court of Appeals, we hold that this claim is foreclosed by the doctrine of res judicata.
Further, even if Shanahan presented a new argument in light of "changes in the legal landscape," as he asserts, his argument fails for several reasons. Concerning the Eighth Amendment, the U.S. Supreme Court explained in Miller.
The Eighth Amendment's prohibition of cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions. That right, we have explained, flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense. As we noted the last time we considered life-without-parole sentences imposed on juveniles, the concept of proportionality is central to the Eighth Amendment. And we view that concept less through a historical prism than according to the evolving standards of decency that mark the progress of a maturing society.
567 U.S. at 469-70, 132 S.Ct. 2455 (internal citations and quotations omitted). In assessing whether a sentence violates the Eighth Amendment, "[a] court must begin by comparing the gravity of the offense and the severity of the sentence." Graham , 560 U.S. at 60, 130 S.Ct. 2011.
"[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.
Id. (quoting Harmelin v. Michigan , 501 U.S. 957, 960, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ).[6] "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." Id. (quoting Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 ).
Although Shanahan seeks to extend Miller to all juvenile offenders sentenced as adults, Miller only held that imposing the harshest possible sentence on a juvenile homicide offender without consideration of youth and its attendant characteristics poses a risk of violating the Eighth Amendment. Miller , 567 U.S. at 479, 132 S.Ct. 2455 ("By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment."). Thus, it does not follow from the logic of Miller that every youth who is sentenced as an adult is entitled to consideration of the Miller factors.
Moreover, this is not the "rare case" in which a threshold comparison of the gravity of the offense and the severity of the sentence leads to an inference of gross disproportionality. Shanahan committed a senseless, premeditated murder and a robbery that resulted in his sentence of concurrent unified life terms, with thirty-five years fixed for the murder and ten years fixed for the *164 robbery. Given the gravity of his charged crimes and the heinous manner in which they were committed, it is quite a legal stretch for Shanahan to describe his sentence as being "far beyond excessive."
Finally, even if this was the rare case where an initial comparison led us to believe that Shanahan's sentence is grossly disproportionate in light of the crimes he committed, a review of other sentences for homicide crimes committed by juveniles in this jurisdiction and others demonstrates that Shanahan's sentence is not excessive, and accordingly, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. See, e.g., Adamcik v. State , 163 Idaho 114, 130, 408 P.3d 474, 490 (2017), cert. denied, --- U.S. ----, 138 S. Ct. 1607, 200 L.Ed.2d 779 (2018) (no Eighth Amendment violation for juvenile's sentence of life without parole for homicide); Johnson v. State, 162 Idaho 213, 226, 395 P.3d 1246, 1259, cert. denied, --- U.S. ----, 138 S. Ct. 470, 199 L.Ed.2d 357 (2017) (no Eighth Amendment violation for juvenile's sentence of life without parole for homicide); Brown v. Hobbs , No. CV-13-1116, 2014 WL 2566091, at *6 (Ark. June 5, 2014) (no Eighth Amendment violation for juvenile's sentence of life without parole for homicide); James v. United States, 59 A.3d 1233, 1239 (D.C. 2013) (no Eighth Amendment violation for juvenile's sentence of life with thirty years fixed for homicide); State v. Vang, 847 N.W.2d 248, 262 (Minn. 2014) (no Eighth Amendment violation for juvenile's sentence of life with thirty years fixed for homicide); State v. Houston, 353 P.3d 55, 62 (Utah 2015) (no Eighth Amendment violation for juvenile's sentence of life without parole for homicide); Sen, 390 P.3d at 772 (no Eighth Amendment violation for juvenile's sentence of life with thirty-five years fixed for homicide). Notably, Shanahan cited no cases holding that an indeterminate life sentence with thirty-five years fixed, even for a juvenile, is disproportionate to a homicide offense.
In sum, we hold that res judicata bars Shanahan's claim, and even if it did not, his argument that his sentence is grossly disproportionate is without merit.
V. CONCLUSION
We affirm the decision of the district court denying Shanahan's Rule 35 motion.
Chief Justice BURDICK, and Justices BEVAN and STEGNER concur.
BRODY, Justice, concurring in the result, but dissenting in Parts A and B of the analysis.
I respectfully dissent from the Court's decision to expand the U.S. Supreme Court's holding in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). I agree that the Supreme Court's decision in Miller required this Court to re-examine fixed life sentences for juvenile offenders convicted of homicide in cases where the imposition of the sentence was discretionary on the part of the trial court. See, e.g., Adamcik v. State, 163 Idaho 114, 130, 408 P.3d 474, 490 (2017) ; Windom v. State, 162 Idaho 417, 423, 398 P.3d 150, 156 (2017) ; Johnson v. State, 162 Idaho 213, 226, 395 P.3d 1246, 1259 (2017). I am unpersuaded that Miller's constitutional constraint on a life sentence for a juvenile extends to indeterminate sentences that are the "functional equivalent" of a fixed life sentence. Miller applies only to fixed life sentences. I agree with the Court's decision to affirm the district court in this case, but would not start down the path of using the Eighth Amendment to re-examine lengthy indeterminate sentences for juveniles convicted of homicide.

Shanahan attempts to evade application of the Harmelin disproportionality test by arguing that in Miller, the Court "brushed aside strict adherence to [ Harmelin' s ] longstanding disproportionality test." In Miller, the Court said, 'Harmelin had nothing to do with children, and did not purport to apply to juvenile offenders. Indeed, since Harmelin, this Court has held on multiple occasions that sentencing practices that are permissible for adults may not be so for children." 132 S. Ct. at 2459. However, Shanahan takes this language out of context. The Miller Court was not rejecting application of Harmelin in its entirety, but merely rejecting the State's argument that Harmelin "forecloses a holding that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." Id. Thus, application of the Harmelin disproportionality test is appropriate in this case.