# IN THE SUPREME COURT OF THE STATE OF IDAHO

## DOCKET NO. 48782

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

JESUS MANUEL GARCIA,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2022 Term

Opinion Filed: August 25, 2022

Melanie Gagnepain, Clerk

———————————

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Michael Reardon, District Judge.

The order of the district court is affirmed.

Eric D. Fredericksen, State Appellant Public Defender, for Appellant. Elizabeth Allred argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. John McKinney argued.

———————————

BRODY, Justice.

This appeal is Jesus Garcia's second challenge to an order of restitution. After a jury found Garcia guilty on charges related to a deadly night-club incident, the district court ordered restitution against Garcia in the amount of $162,285.27. In *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020) ("*Garcia I*"), this Court reversed the district court's restitution order after determining the district court had not properly considered Garcia's future ability to repay that amount. On remand, the district court held a second restitution hearing, weighed evidence from before and after remand, and determined Garcia has the foreseeable ability to pay the restitution amount. The district court then reinstated the original order in full. Garcia appeals, arguing the district court's decision ignored this Court's restitution holding in *Garcia I*, and is not supported by substantial evidence. For the reasons discussed below, we affirm.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2018, a jury found Garcia guilty of second-degree murder, aggravated battery, use of a deadly weapon during the commission of a crime, and possession of a controlled substance. Leading up to his sentencing, Garcia refused to participate in the presentence investigation process. Because of this, Garcia was not interviewed after his 2018 conviction to gather an updated history regarding his family, education, physical health, mental health, substance use, or work history.

Instead, the 2018 presentence materials included Garcia's history as of a 2011 presentence report related to Garcia's prior convictions for aggravated assault and unlawful entry. The materials also included Garcia's presentence memorandum. In it, Garcia updated his "lengthy work history" doing dry-wall work with his uncle, bussing tables, and working in the trailer manufacturing industry for approximately five years. The district court ultimately sentenced Garcia to twenty-five years to life on the second-degree murder charge, with additional sentences on the other charges to run concurrently.

Two months after sentencing, the district court held a restitution hearing. There was no dispute that $162,285.27 was the correct amount of restitution. Garcia's defense counsel explained that the dispute was whether the district court should, in fairness, order that full amount, or some lesser amount. In lieu of oral argument, the district court ordered the parties to brief the issue. Once the briefing was complete, the district court issued its decision and ordered restitution against Garcia for the full amount.

Garcia appealed, assigning numerous errors related to trial and sentencing, and that the district court had abused its discretion in ordering restitution. *See State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020). Ultimately, we affirmed the judgment of conviction and the sentence, but vacated the order of restitution and remanded the case. *Id*. at 683, 462 P.3d at 1147.

On remand, with no objection from either party, the district court held a second restitution hearing. The district court heard testimony from a financial specialist for inmate accounting, a restitution coordinator, and a research analyst from the Parole Commission. The financial specialist, using supporting exhibits, testified to numerous outside deposits Garcia received from family and friends along with wages Garcia received as an inmate janitor. Across roughly two and a half years, $14,715 was deposited into Garcia's account.

Next, the restitution coordinator testified that garnishments of the outside deposits had, as of the hearing date, totaled $2,267.90 and had been paid toward Garcia's restitution. The coordinator also testified that due to the post-judgment interest on the principal, Garcia's underlying restitution balance had increased by more than $2,000.00 at the end of those two and a half years despite the $2,267.90 payment. Finally, the research analyst testified to parole statistics for similarly situated individuals as Garcia. The analyst further testified that inmates have control over some factors influencing parole eligibility but not others.

After closing arguments, the district court gave a "thumbnail" ruling from the bench which it later memorialized in a written memorandum and order. Based on the 2018 presentence materials (including the 2011 presentence report and Garcia's memorandum), and the new evidence received on remand, the district court found that Garcia has the foreseeable ability to pay the full $162,285.27 upon release. From this, the court reinstated its original order of restitution. Garcia timely appealed.

## II.    STANDARD OF REVIEW

"This Court reviews a district court's restitution order for an abuse of discretion[.]" *State v. Foeller*, 168 Idaho 884, 887, 489 P.3d 795, 798 (2021). On review of an alleged abused of discretion, we evaluate whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"If the findings of fact are based upon substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal." *Akers v. Mortensen*, 147 Idaho 39, 43, 205 P.3d 1175, 1179 (2009). "This Court will not substitute its view of the facts for that of the trial court." *Id*. "Substantial evidence is 'relevant evidence as a reasonable mind might accept to support a conclusion.' " *State v. Wisdom*, 161 Idaho 916, 919, 393 P.3d 576, 579 (2017) (quoting *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013)).

## III.    ANALYSIS

In this appeal, Garcia challenges the district court's order requiring him to pay the full $162,285.27 in restitution. Garcia first argues that the district court improperly ignored part of this Court's holding in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020) by relying on the

presentence materials to support its finding of Garcia's foreseeable ability to pay. Garcia also argues that there is not substantial evidence to support a finding that Garcia has the foreseeable ability to pay the restitution in full. For the reasons discussed below, we affirm the district court's decision.

The Idaho Constitution grants "crime victim[s], as defined by statute," numerous rights. Idaho Const. art. I, § 22. One such right is the right "[t]o restitution, as provided by law, from the person committing the offense that caused the victim's loss." *Id.* at § 22(7); *see Foeller*, 168 Idaho at 888, 489 P.3d at 799. Idaho Code section 19-5304 is the statute that defines a crime victim's right to restitution. That statute provides that "[u]nless the court determines that an order of restitution would be inappropriate or undesirable, it shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim." I.C. § 19-5304(2).

However, the restitution ordered may be, in the trial court's discretion, "complete, partial, or nominal." *Id.* In exercising this discretion, the trial court must consider the factors set out in subsection (7) of Idaho Code section 19-5304:

> The court, in determining whether to order restitution and the amount of such restitution, shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate. The immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution.

I.C. § 19-5304(7).

Stated another way, subsection (7) instructs trial courts to consider: the amount of economic loss sustained by the victim(s) as a result of the offense; the financial resources of the defendant; the needs of the defendant; the earning ability of the defendant; and other factors as the court deems appropriate. *Id.*; *Wisdom*, 161 Idaho at 919, 393 P.3d at 579. Importantly, there is one factor in subsection (7) that curbs a trial court's discretion: that the "immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution." I.C. § 19-5304(7).

Accordingly, if a defendant does not have the immediate ability to pay restitution, a court may order restitution if, after considering the above factors, it finds a *foreseeable ability* to pay restitution. *Garcia*, 166 Idaho at 681–82, 462 P.3d at 1145–46. To reach this ultimate finding, a trial court is not required to "divine a defendant's future financial capabilities" or "limit a victim's right to restitution to what is presently known about the defendant." *Id.* at 683, 462 P.3d

4

at 1147. Indeed, even if a defendant is unlikely to ever meet the full amount of restitution, an order of restitution may be upheld if it does not require installment payments or deadlines but simply gives the victims the present ability to obtain a judgment. *See State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989) (affirming an order of restitution for $1,500,035 based on the defendant's foreseeable ability to pay upon release).

### A. The district court could properly rely on the presentence materials to find Garcia has the foreseeable ability to pay restitution in full.

Garcia first argues that during the first appeal, this Court essentially "found" that the presentence materials (the 2011 presentence report and Garcia's memorandum) did not constitute substantial evidence of a foreseeable ability to repay the restitution awarded. Because of this, Garcia contends the district court could not use the presentence materials to find that Garcia has the foreseeable ability to pay without additional evidence concerning his earning capacity. In support of his argument, Garcia also points to our recent decision in *State v. Foeller*, 168 Idaho 884, 489 P.3d 795 (2021), where we commented on and distinguished *Garcia I*. However, for the reasons discussed below, Garcia's argument is unavailing.

In *Garcia I*, we held that the district court abused its discretion in ordering restitution against Garcia based on the four-prong abuse of discretion test. 166 Idaho at 682, 462 P.3d at 1146. To reiterate, that four-prong test is as follows:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

We explained that the district court erred under prongs two and four. *Garcia*, 166 Idaho at 682, 462 P.3d at 1146. Under prong two, the district court failed to recognize the boundaries of its discretion by not distinguishing between Garcia's "immediate" and "foreseeable" ability to pay restitution. *Id*. Under prong four, the district court did not show an exercise of reason in finding Garcia had the ability to pay restitution because it provided no analysis or findings under Idaho Code section 19-5304(7). *Id*. Indeed, the district court's "ability to pay" analysis was comprised of one conclusory sentence: "Having considered [Garcia's] economic circumstances, the [c]ourt concludes that an order of restitution is appropriate in this case." *Id*. (quoting the district court) (alterations original). From these errors, we vacated the order of restitution, and

remanded "for a proper, reasoned consideration of all of the factors identified in Idaho Code section 19-5304(7), including Garcia's future ability to repay." *Id*. at 683, 462 P.3d at 1147.

However, in this appeal, Garcia contends that in *Garcia I* this Court determined there was a third error as a basis for vacating and remanding the original order of restitution. Based on the excerpt below, Garcia argues this Court decided that the presentence materials were only substantial evidence of Garcia's *inability* to repay:

> This Court observed that the district court in *Wisdom* had specifically found that Wisdom could expect her employment situation to improve; this Court found that "[t]he presentence materials serve[d] as substantial evidence supporting that conclusion." *Wisdom*, 161 Idaho at 924, 393 P.3d at 584. There is no similar analysis provided by the district court here, *even though nothing in the presentence materials serves as "substantial evidence" that Garcia has any foreseeable ability to repay the amount of restitution awarded*.

*Garcia*, 166 Idaho at 682–83, 462 P.3d at 1146–47 (alterations original) (emphasis added).

Garcia casts this "presentence materials comment" as binding for purposes of remand. In other words, Garcia contends that on remand, the presentence materials could *only* serve to support a finding that Garcia does *not* have the ability to repay. Because the district court relied on the presentence materials to support its finding of Garcia's foreseeable ability to repay, Garcia alleges the district court erred.

Garcia's argument here, without explicitly saying so, essentially asks this Court to apply its "law of the case" doctrine to the presentence materials comment. *See Berrett v. Clark Cnty. School Dist. No. 161*, 165 Idaho 913, 921, 454 P.3d 555, 563 (2019). "The 'law of the case' doctrine is well established in Idaho." *Id*. at 921, 454 P.3d at 563. It applies "where an appellate court pronounces a 'principle or rule of law necessary to the decision.' " *Id*. at 922, 454 P.3d at 564 (quoting *Regan v. Owen*, 163 Idaho 359, 363, 413 P.3d 759, 763 (2018)).

Such pronouncements must be adhered to throughout subsequent proceedings, both in the trial court and upon subsequent appeal. *Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000). "The underlying purpose of the doctrine is to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuous lawsuit[.]' " *Berrett*, 165 Idaho at 922, 454 P.3d at 564 (alteration added) (quoting *State v. Dunlap*, 155 Idaho 345, 375–76, 313 P.3d 1, 31–32 (2013)). Conversely, if a statement by an appellate court is not necessary to decide the issue presented, it is considered to be dictum and not controlling. *State v. Hawkins*, 155 Idaho 69, 74, 305 P.3d 513, 518 (2013).

Here, even if we assume, without deciding, that the "law of the case" doctrine applies, Garcia's reliance on it is misplaced. The presentence materials comment in *Garcia I* was dictum. As explained above, the district court's original order of restitution was in error under prongs two and four of the abuse of discretion test. *Garcia*, 166 Idaho at 682, 462 P.3d at 1146. This was error sufficient to vacate the order of restitution and remand for further proceedings. Contrary to Garcia's position, our analysis in *Garcia I* did not turn on whether there was substantial evidence in the record to support the district court's findings. Indeed, we never reached this question because the district court failed to make *any* finding on Garcia's foreseeable ability to repay. *Id.* at 683, 462 P.3d at 1147.

Furthermore, Garcia's reliance on *State v. Foeller*, 168 Idaho 884, 489 P.3d 795 (2021), to support his "law of the case" argument is also misplaced. Garcia points to *Foeller* because this Court upheld the district court's brief restitution analysis by distinguishing it from the inadequate restitution analysis in *Garcia I*. *Id.* at 889, 489 P.3d at 800. In doing so, we noted that in *Garcia I* there was "no support in the record" to show that Garcia would be able to pay the full restitution order after serving a twenty-five-year sentence. *Id.* at 889, 489 P.3d at 800. Here, relying on this comment from *Foeller*, Garcia argues that this Court *did* reach the substantial evidence question in deciding *Garcia I*.

However, contrary to Garcia's position, this Court's comment on *Garcia I* in deciding *Foeller* does not change what "law of the case" emanates from *Garcia I* itself. In applying the "law of the case" doctrine, this Court only considers principles or rules of law in the relevant case's lineage—not language from a decision outside that case's lineage. *See, e.g.*, *Taylor v. Maile*, 146 Idaho 705, 709, 201 P.3d 1282, 1286 (2009); *Hawkins*, 155 Idaho at 72–73, 305 P.3d at 516–17; *Berrett*, 165 Idaho at 922, 454 P.3d at 564; *State v. Gorringe*, 168 Idaho 175, 179, 481 P.3d 723, 727 (2021). Here, *Foeller* is outside the lineage of Garcia's case. Thus, this Court's comments in *Foeller* to distinguish *Garcia I* are not "law of the case" for purposes of *Garcia I* and did not limit the district court's discretion to re-weigh the evidence on remand.

In summary, contrary to Garcia's position, the district court was not required to weigh the presentence materials in favor of a particular finding on remand. Instead, the district court was free to weigh the evidence (from before and after remand) when considering the factors under Idaho Code section 19-5304(7), and Garcia's foreseeable ability to pay. As explained below, the district court did just that.

**B. Substantial evidence supports the district court's finding that Garcia has the foreseeable ability to pay the full order of restitution.**

In its ruling, the district court ultimately found Garcia had the foreseeable ability to pay the full $162,285.27 in restitution. As explained below, some of the evidence conflicts with this ultimate finding. Nevertheless, notwithstanding the conflicting evidence in the record, there was substantial evidence upon which the district court relied in support of its conclusion that Garcia has the foreseeable ability to pay restitution in full.

To begin, the district court's decision reasoned that Garcia had the ability to pay because he had made "progress" in paying down his restitution balance by $2,267.90. At the restitution hearing after remand, new evidence showed $14,715 had been deposited in Garcia's inmate account across roughly two and a half years. The majority came from outside deposits by family and friends, while $394.50 of the $14,715 came from Garcia's work as an inmate janitor. Each outside deposit was garnished by twenty percent for payment towards Garcia's restitution. These garnishments constitute the $2,267.90 in repayment the district court considered as evidence of Garcia's ability to repay the restitution.

However, on appeal, Garcia correctly points out that due to accruing interest under Idaho Code section 28-22-104, Garcia's overall balance, despite the garnished payments, was actually $2,000 higher at the end of that two and one half year period. Assuming the frequency and amount of the outside deposits continues for the next twenty-five years, the garnishments will not keep up with the interest. Thus, the record does not support the district court's reasoning that Garcia has made "progress" in paying down his restitution. Instead, the record only reflects that Garcia *does not* have the immediate or foreseeable ability to pay down the interest, or the principal, of his restitution order while incarcerated. Therefore, the outside deposits do not support the district's court's ultimate finding of Garcia's foreseeable ability to repay.

Nonetheless, the district court properly considered other factors under Idaho Code section 19-5304(7) alongside Garcia's foreseeable ability to pay, and there is still substantial evidence to uphold the district court's decision. First, the district court considered the $162,285.27 in economic losses sustained by the victims as a result of Garcia's offenses. Based on the evidence before and after remand, the district court next considered Garcia's financial resources, needs upon release, and earning ability to repay the restitution amount in full. For example, the court considered Garcia's positive five-year employment history in the trailer manufacturing industry,

his potential employment capacity in the same or similar industry upon release, and the educational and vocational opportunities available to Garcia to increase his employability and earning capacity before release. The court further noted that there was no evidence Garcia has any impairments, mental or physical, that would adversely impact his employability or ability to perform work in the future. Thus, the court reasonably determined that Garcia will likely be employable and "able-bodied" when he is first eligible for parole in twenty-five years.

The district court also considered the testimony from a research analyst at the Parole Commission regarding the probability of parole for individuals similarly situated to Garcia. The analyst essentially testified there was no guarantee Garcia will be released when he is first eligible for parole in twenty-five years. The analyst also testified that some of the factors used to decide whether to parole an inmate are within that inmate's control—but some are not.

On appeal, Garcia argues the analyst's testimony "bolsters" his argument against imposing the *full* amount of restitution because it makes it less likely Garcia will be paroled while he is young enough to secure gainful employment. However, Garcia's view of this evidence merely conflicts with the district court's ultimate finding that is otherwise supported by substantial evidence. Thus, for the reasons stated above, we affirm.

## IV. CONCLUSION

We affirm the district court's order of restitution in the amount of $162,285.27.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN, concur.